## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **FERNANDO DE LEON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-2565** |
| | § | |
| | § | |
| **HARRIS COUNTY, TEXAS,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Fernando De Leon, complaining of Harris County, Texas, and for causes of action will respectfully show unto the Court as follows:

> Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

## SUMMARY

On approximately July 9, 2022, Plaintiff Fernando De Leon was assaulted by another inmate while incarcerated in the Harris County Jail. Plaintiff was subsequently diagnosed with a clavicle fracture, epidural hematoma, and linear skull fracture at Ben Taub Hospital. Upon being released from the hospital Plaintiff was informed by orthopedic doctors and a neurosurgeon that he needed to be scheduled for surgery to reconstruct his collar bone and he was told not to lift anything over ten pounds for two months. Plaintiff was released from the hospital in a wheelchair and taken back to Harris County Jail. When Plaintiff returned back to Harris County, Jailers Miller and Newsome took his wheelchair from him and placed him in a temporary single holding cell without providing a replacement wheelchair. Plaintiff was also assigned to a top bunk which required him to climb up to reach instead of a bottom bunk. Despite Plaintiff having made numerous officers aware of his obvious need for a wheelchair and bottom bunk – through both verbal notifications and written grievances – he was not provided with either. Further, Plaintiff was not taken to necessary medical follow ups or surgeries. This was due to the conditions of confinement at Harris County Jail of not providing disabled inmates, with required medical accommodations – such as wheelchairs, bottom bunks, and follow up care – causing them to suffer from more pain and punishment then non-disabled inmates. These failures by Harris County also amounted to violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act for refusing to provide Plaintiff with a wheelchair, bottom bunk, or follow up care.

Plaintiff now files this lawsuit against Harris County, Texas for the unconstitutional conditions of confinement in the Jail which violated his rights under the United States Constitution to receive adequate medical care, as well as violations of his rights under Title II of the Americans with Disabilities Act and Rehabilitation Act.

2

## I.
## PARTIES

1.      Plaintiff Fernando De Leon is an individual who is residing in Harris County, Texas.

2.      Defendant Harris County, Texas is a political subdivision of the State of Texas located in the Southern District of Texas. Defendant Harris County, Texas can be served through its County Judge, Lina Hidalgo, at 1001 Preston, Suite 911, Houston, Texas 77002, or wherever she may be found.

## II.
## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendant is a political subdivision located in the Southern District of Texas, and all of the causes of action accrued in the Southern District of Texas.

## III.
## FACTS AND ALLEGATIONS

5.      In July of 2022, Plaintiff Fernando De Leon was incarcerated in the Harris County Jail.

6.      On approximately July 9, 2022, Plaintiff was housed in 4C3 pod where he was extorted and assaulted by inmates for his commissary and artwork.

7.      That same day, Plaintiff asked a female sergeant working on the fourth floor to move him from 4C pod due to fear that his life would be in danger from the inmates who were extorting and assaulting him.

8.      The female sergeant pulled Fernando out of 4C pod and put him in a separate room for a couple of hours in response to Plaintiff warning her that his life was in danger.

9.      However, instead of keeping Fernando in the separate room or providing him with some other form of protection following Plaintiff's complaint of inmate threats, the female officer returned Fernando back to the 4C pod and said, "too bad, too sad."

10.      Fernando was body slammed and stomped by another inmate after being placed back into 4C pod by the female officer.

11.      Plaintiff lost consciousness upon impact when hitting the ground.

12.      Plaintiff woke up and found himself laying on the floor bleeding with a loss of mobility to his body.

13.      Plaintiff was transported to Ben Taub Hospital Below for his injuries.

14.      Below are screenshots from Plaintiff's medical records which show he was diagnosed with a clavicle fracture, epidural hematoma, and linear skull fracture after being assaulted.

**moved off the Stretcher at Destination?**

**Narrative History Text:**
A-we were escorted by CO Bracamontes to pick up inmate 02733101. Pt came in at 7:30 am after the event happened at 5:30 am. Pt claims he was picked up by a 600-700 lb inmate that spun and body slammed on him then continued to lay on him. Pt was administered ibuprofen and Tylenol an hour prior to our arrival. Pt was being taken to a trauma 1 center for higher level of care.

C- see cc section

H- see pt section

A- pt lost consciousness on impact when hitting the ground. See event log and pt section

**BEN TAUB GENERAL HOSPITAL ORTHOPEDIC SURGERY**
**ESTABLISHED PATIENT CLINIC VISIT**

**ASSESSMENT:**
1.   **Closed displaced fracture of shaft of right clavicle with routine healing, subsequent encounter**

**Summary: 40 y/o incarcerated M w/ psych history who sustained a R comminuted midshaft clavicle fracture after being body slammed by a 600 lb inmate (DOI: 7/10). Also has epidural hematoma and subdural hemorrhage being managed my NSGY.**

**Discharge Instructions:**

Return to the hospital immediately if you develop progressive muscular weakness, changes in bowel or bladder function, headache, visual change, difficulty speaking, seizure, loss of consciousness, confusion, chest pain, shortness of breath, nausea, vomitting, uncontrolled pain, or any other concerning symptom.

No aspirin.

MEDICATIONS:
Please resume taking your previous home medications as prescribed. Pain control will be managed per your prison infirmary.

ACTIVITY LIMITATIONS:
Do not lift more than 10 lbs for 2 months. Advancements in activity will be provided at follow up visits.

15.     Plaintiff was told by orthopedic doctors and a neurosurgeon that he needed to be scheduled for surgery to reconstruct his collar bone. Plaintiff was also instructed not to lift more than ten pounds for two months. Below is a screen capture of the discharge instructions given to Plaintiff to follow up in one month with neurosurgery and follow up with orthopedics on July 14th at 2:00 PM for his clavicle fracture.

**Clinical Notes**

**Discharge Instructions**

Dinis, Jacob, ResidentMD at 7/11/2022 1705

| | | |
|---|---|---|
| Author: Dinis, Jacob, ResidentMD | Service: — | Author Type: Resident |
| Filed: 7/11/2022  5:10 PM | Date of Service: 7/11/2022  5:05 PM | Status: Edited |
| Editor: Dinis, Jacob, ResidentMD (Resident) | | |

-Follow up in 1 month wit neurosurgery
-Follow up with orthopedics July 14th 2PM for clavicle fracture
-Hydrocodone-acetaminophen (Norco) 5-325 mg every six hours for pain as needed
-Can continue taking other medications as prescribed.
-Strict return precautions for worsening symptoms including headache, numbness, -weakness, or tingling.

Electronically signed by Dinis, Jacob, ResidentMD at 7/11/2022  5:05 PM
Electronically signed by Dinis, Jacob, ResidentMD at 7/11/2022  5:09 PM
Electronically signed by Dinis, Jacob, ResidentMD at 7/11/2022  5:09 PM
Electronically signed by Dinis, Jacob, ResidentMD at 7/11/2022  5:09 PM
Electronically signed by Dinis, Jacob, ResidentMD at 7/11/2022  5:10 PM
Electronically signed by Dinis, Jacob, ResidentMD at 7/11/2022  5:10 PM

16.     Plaintiff was released from Ben Taub Hospital in a wheelchair and taken back to Harris County Jail.

17.     When Plaintiff returned to the Jail from the hospital, Jailer Miller and Jailer Newsome took his wheelchair from him and placed him in a temporary holding cell without providing a replacement wheelchair.

18.     Plaintiff was also placed on a top bunk without support for his neck injury.

19.     Officer Diaz told Plaintiff he was placed in the temporary holding cell without his wheelchair due to housing not being available for him.

20.     Below are screen captures of grievances that Plaintiff submitted while incarcerated in the Harris County Jail complaining about his lack of medical care including not being provided with a replacement wheelchair, being placed in a temporary holding cell on a top bunk despite the severe injuries he had sustained, and missing his medical appointments for follow up care.





21. Sheriff Gonzalez was the sheriff and policymaker for Harris County with respect

to the jail in 2022 when Plaintiff was denied a replacement wheelchair by Jailer Miller and Jailer

Newsome due to a practice at the Harris County Jail of not providing disabled inmates with the wheelchairs they required, causing them to suffer from more pain and punishment then non-disabled inmates.

22.     As a direct, proximate, and foreseeable result of Defendant Harris County's actions, Plaintiff suffered serious physical injuries, pain and suffering, mental and emotional anguish, and permanent physical disfigurement.

23.     Defendant was at all times acting under the color of law.

## IV.
## CAUSES OF ACTION

### COUNT I

**Municipal Liability – Conditions of Confinement**
**Violation of the Fourteenth Amendment**
**Pursuant to 42 U.S.C § 1983**
**Defendant Harris County, Texas**

24.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

25.     Municipalities and other local governments are "persons" within the meaning of Section 1983 and can therefore be held liable for violating a person's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Bonilla*, 982 F.3d at 308.

26.     Municipalities are, however, responsible only for "their own legal acts." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). They cannot be held liable on a *respondeat superior* theory solely because they employ a constitutional tortfeasor. *Monell*, 436 U.S. at 691–92.

27.     Plaintiff invokes the "conditions of confinement" theory of liability against Harris County for his injuries. *See Flores v. Cnty of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir 1997).

28.     Plaintiff's conditions of confinement theory of liability challenges the conditions, practices, rules or restrictions of pretrial confinement imposed by Defendant Harris County that, together, "impose[] what amounts to punishment in advance of trial." *Sanchez v. Young Cnty.*, Tex., 866 F.3d 274, 279 (5th Cir. 2017).

29.     Plaintiff must show "(1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez*, 956 F.3d at 791 (quoting *Monell*, 436 U.S. at 694).

### Conditions of Confinement Claim Against Defendant Harris County

30.     A challenge to a condition of confinement is a challenge to "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996).

31.     The issue is whether the conditions "amount to punishment." *Bell*, 441 U.S. at 535.

32.     As has been explained, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees.'" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019).

33.     If Defendant Harris County wishes to incarcerate pretrial detainees, it has a constitutional responsibility to ensure that its conditions do not amount to "punishment" in advance of trial.

34.     To prove a conditions of confinement claim, the plaintiff must show (1) a rule or restriction, an intended condition or practice, or a *de facto* policy as evidenced by sufficiently extended or pervasive acts of jail officials, (2) not reasonably related to a legitimate governmental

objective, and (3) that violated [the detainee's] constitutional rights. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452, 454–55 (5th Cir. 2009).

35.    In the Fifth Circuit, a conditions of confinement claim "requires no showing of specific intent on the part of the [municipality]." *Sanchez*, 866 F.3d at 279; *Edler v. Hockley Cnty. Comm'rs Ct.*, 589 F. App'x 664, 669 (5th Cir. 2014) ("[U]nlike an episodic-act-or-omission claim, a plaintiff is not required to prove deliberate indifference.").

36.    Although an unlawful condition or practice is often explicit, a "formal, written policy is not required." *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 875 (5th Cir. 2016); see *Shepherd*, 591 F.3d at 452.

37.    A condition may "reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645).

38.    As noted by the Fifth Circuit, "specific [prior] examples are not required to meet the 'conditions or practice' element" when there is consistent testimony of jail employees, *Montano*, 842 F.3d at 875 ("Given the striking uniformity of the jail employees' testimony, further evidence was not required for a reasonable juror to infer a *de facto* policy for conditions or practices."), or **the policy maker knows about a misconduct yet fails to take remedial action**, *Sanchez*, 956 F.3d at 793–94.

39.    When multiple employees act in the same unconstitutional manner, that is indicative of a *de facto* policy. *See Sanchez*, 956 F.3d at 793 (finding that evidence that the county's written policies were ignored created fact-issues as to whether the jail had a *de facto* policy of inadequately monitoring intoxicated detainees).

40.     "We do not require a plaintiff to show that a 'policy or practice [was] the exclusive cause of the constitutional deprivation.' Courts 'may . . . consider how individual policies or practices interact with one another within the larger system.'" *See Sanchez*, 956 F.3d at 791.

41.     Municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690–91).

42.     A *de facto* policy can be found when none of the jailers face any reprimand after an inmate's death, or when a municipality fails to take any evident action to correct the jail's alleged deficiencies. *See Sanchez*, 956 F.3d at 793 (finding that "fail[ure] to take remedial action ... arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy.") (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (holding that, because the city policymaker failed to change policies or to discipline or reprimand officials, the jury was entitled to conclude that the complained-of practices were "accepted as the way things are done and have been done in" that city)).

43.     The plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).

44.     "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

45.     A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

46.     To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808).

47.     "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks– Fields*, 860 F.3d at 808.

## POLICYMAKER

### Sheriff Ed Gonzalez

48.     The identification of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

49.     Under Texas law, Sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James v. Harris Cty,* 577 F.3d 612, 617 (5th Cir. 2009); citing *Williams v. Kaufman County*, 352 F.3d 994, 1013 (2003).

50.     Accordingly, Sheriff Ed Gonzalez is the policymaker for Harris County, Texas.

51.     Sheriff Ed Gonzalez was the Sheriff and policymaker for Harris County with respect to the jail in 2022 when Plaintiff  who was wheelchair bound after being assaulted in the Harris County Jail did not receive a replacement wheelchair after his was confiscated by Officer Newsome and Officer Miller due to Harris County Jail's custom and practice of failing to provide

disabled inmates the wheelchairs they required, resulting subjecting them to more pain and punishment than non-disabled inmates.

52.     Upon information and belief, discovery into information within the knowledge of the County will show that Sheriff Ed Gonzalez had constructive knowledge of the customs, practices, and *de facto* policies outlined in this lawsuit, as he would have known of the violations if he would have properly exercised her responsibilities. *Hicks–Fields*, 860 F.3d at 808.

53.     Upon information and belief, discovery into information within the knowledge of the County will show that Sheriff Ed Gonzalez failed to implement corrective or remedial customs, practices, and policies resulting in Plaintiff to be subjected to more pain and punishment than non-disabled prisoners.

54.     Further, upon information and belief, no Harris County employees were reprimanded after Plaintiff was not provided with a wheelchair after his was taken from him by Harris County Jailers Newsome and Miller.

### Policy, Custom, and Practice
### Which was Moving Force of Constitutional Violations

55.     The § 1983 causation component requires that the plaintiff identify, with particularity, the policies or practices they allege cause the constitutional violation and demonstrate a "direct causal link." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 255 (5th Cir. 2018); *See Piotrowski*, 237 F.3d at 580.

56.     The Fifth Circuit does not, however, require the court to consider each policy or practice in a vacuum. *Id.* The court may properly consider how individual policies or practices interact with one another within the larger system and how the harmful effects of some policies are exacerbated by others. *Id.*

57.     The policymaker for Harris County consciously chose each of the policies outlined in this lawsuit over various available alternatives.

**<u>Constitutional Violation</u>**

58.     Pretrial Detainees must rely on jail authorities to treat their medical needs; therefore, the government has an obligation to provide medical care for those whom it is punishing by incarceration.

59.     Plaintiff had a constitutional right to medical care from Defendant Harris County while incarcerated as a pretrial detainee under the 14th amendment.

60.     Because pre-trial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment of the detainee" are unconstitutional. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

61.     And, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." *Bell*, 441 U.S. at 539, 99 S.Ct. 1861).

62.     Pre-trial detainees have the "right to be free from punishment [and] an understandable desire to be as comfortable as possible during [their] confinement, both of which may conceivably coalesce at some point." *Id.*

63.      Furthermore, "detainment itself ... requires that the State provide for inmates' basic human needs." *Shepherd v. Dallas County*, 591 F.3d at 445, 452 (5th Cir. 2009).

64.     Thus, a "jail's gross inattention to the needs of [its] inmates ... [i]n the absence of any legitimate penological or administrative goal, [ ] amounts to punishment." *Id.* at 454.

65.     More specifically, "pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective." *Hare*, 74 F.3d at 642 (quoting *Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir. 1987)).

66.     Under the Eighth and Fourteenth Amendments, "[d]isabled inmates must be provided with physical accommodations necessary because of their disabilities, including adequate toilet and shower facilities, as well as wheelchair and other mobility aids." *Coker v. Dall. Cnty. Jail*, No. 3:05–CV–005–M, 2009 WL 1953038, at *22 (N.D. Tex. Feb. 25, 2009).

67.     In *Coker* the court found that the failure to accommodate the needs of a disabled prisoner is discrimination if it causes the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *see Coker v. Dallas Cnty*. Jail, No. 3:05-CV-005-MBH, 2009 WL 1953038, at *30 (N.D. Tex. Feb. 25, 2009), report and recommendation adopted as modified, No. CIV.A. 3:05-CV-005-M, 2009 WL 1953037 (N.D. Tex. July 6, 2009)(stating "The failure to provide wheelchairs to mobility-impaired inmates who require them can violate the Eighth Amendment if the failure to provide poses a substantial risk of serious harm."; *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir.1993) (granting summary judgment for the plaintiff inmate based on undisputed evidence that prison authorities denied him the use of his wheelchair); *Lavender v. Lampert*, 242 F.Supp.2d 821, 849 (D.Or.2002) (deliberate indifference to deny use of a wheelchair to inmate who lacks mobility); *Beckford v. Irvin*, 49 F.Supp.2d 170, 180–181 (W.D.N.Y.1999) (regularly deprivation of wheelchair for extended periods of time held to be evidence of a serious medical need that defeated defendants' motion for judgment as a matter of law)."

68.     In *Jones*, a conditions of confinement and failure to provide adequate medical care case, plaintiff Jones claimed that the defendants were liable to him because they ignored his repeated requests to be assigned a bottom bunk, despite awareness of his infirmities, his requests

for a wheelchair were ignored. *Jones v. St. Tammany Par*. Jail, 4 F. Supp. 2d 606, 609 (E.D. La. 1998)

69.     According to the court in *Jones*,

The evidence shows that despite Jones having made the defendants aware of his apparent medical need for a wheelchair, he was not provided one. The defendants' evidence does not address whether there is a finite number of wheelchairs available for prisoners. The defendants' only explanation for why Jones did not receive a wheelchair was that "the medical personnel did not order a wheelchair for Mr. Jones." There is no explanation as to why the medical personnel did not order a wheelchair, and the court cannot assume that it was based on lack of medical need, as opposed to lack of availability. The court finds that Jones has raised genuine issues of material fact as to whether the Sheriff had a policy or practice of maintaining an inadequate number of wheelchairs, whether any such practice was reasonably related to a legitimate governmental purpose, and if not, whether any such practice was maintained with objective deliberate indifference to Jones' substantial risk of harm.

*Jones,* 4 F. Supp. 2d at 614.

70.     Here, Plaintiff was transported to Ben Taub Hospital as a result of being assaulted by another inmate.

71.     Plaintiff lost consciousness and woke up with a loss of mobility requiring use of a wheelchair during transport to Ben Taub Hospital.

72.     At Ben Taub Hospital, Plaintiff was diagnosed with a clavicle fracture, epidural hematoma, and subdural hemorrhage.

73.     Plaintiff was told by orthopedic doctors and a neurosurgeon that he needed to be scheduled for surgery to reconstruct his collar bone.

74.     Plaintiff was released from Ben Taub Hospital in a wheelchair and taken back to Harris County Jail.

75.     When Plaintiff returned back from the hospital Jailer Miller and Newsome took his wheelchair from him and placed him in a temporary holding cell without providing him with replacement wheelchair.

76.     Plaintiff was also placed on a top bunk without support for his neck injury.

77.     Plaintiff did not receive a replacement wheelchair after his was confiscated by Officer Newsome and Officer Miller due to Harris County Jail's custom and practice of failing to provide disabled inmates requiring a wheelchair access to a wheelchair resulting subjecting them to more pain and punishment than non-disabled inmates.

78.     Upon information and belief, discovery into information within the knowledge of the County will show that the County's policymaker consciously chose each of the policies, practices, customs, and *de facto* policies outlined in this lawsuit over various available alternatives, despite knowledge that constitutional violations would occur if not changed.

79.     It is clear that there is a practice of not providing wheelchairs to inmates who require them – such as Plaintiff in this case – as Jailer Miller, Jailer Newson, Officer Diaz, and the officers and medical personnel employed at the Harris County Jail who received and reviewed Plaintiff's grievances requesting a wheelchair all continued denying him a wheelchair. *Montano*, 842 F.3d at 875; *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645).

80.     Upon information and belief, discovery into information within the knowledge of the County will show that the County's employees will testify to these policies and practices. *Montano*, 842 F.3d at 875.

81.     Upon information and belief, discovery into information within the knowledge of the County will show that the County's policymaker consciously chose not to alter or remedy each

of the policies, practices, customs, and *de facto* policies outlined in this lawsuit, despite knowledge that constitutional violations would occur if not changed.

82.     As a result of these unconstitutional policies, practices, customs, and *de facto* policies, Plaintiff was denied a wheelchair despite needing one causing him to suffer from more pain and punishment then non-disabled inmates.

83.     These injuries were not caused by any other means.

## COUNT II

### Violation of the Americans with Disabilities Act
### Defendant Harris County, Texas

84.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

85.     Under Title II of the Americans with Disabilities Act (hereinafter referred to as the "ADA"), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

86.     The ADA requires public entities to provide reasonable accommodations to qualified individuals with disabilities to enable them to benefit from the service and participate in programs or activities.

87.     Plaintiff is a qualified individual with a disability pursuant to the ADA because of his clavicle fracture, epidural hematoma, and subdural hemorrhage which resulted in loss of mobility and necessitated the use of a wheelchair at the time relevant to this lawsuit.

88.     Here, Harris County failed to accommodate Plaintiff in violation of the ADA by confiscating his wheelchair when he returned from Ben Taub Hospital and refusing to provide Plaintiff with a replacement wheelchair and instead confining him to a single cell with a top bunk.

89.     Instead of accommodating Plaintiff's needs, Plaintiff was denied adequate accommodations available to others that would have prevented his pain and suffer, i.e., the provision of a wheelchair and bottom bunk.

90.     As a result of the unlawful actions of Harris County, Plaintiff suffered injuries including pain and suffering, physical injuries, and emotional distress.

91.     The harm to Plaintiff was preventable by providing Plaintiff with accommodations like the wheelchair he needed and a bottom bunk he did not have to climb to the top to reach.

92.     Because of Plaintiff being injured and wheelchair bound and Harris County's refusal to provide him with a replacement wheelchair after confiscating it or a bottom bunk, Plaintiff did not receive accommodations like all other non-disabled inmates in the Harris County Jail.

93.     The failure to accommodate Plaintiff's disabilities was intentional and/or deliberately indifferent to his rights under Title II of the ADA and was the proximate cause of his injuries.

## COUNT III

### Violation of § 504 of The Rehabilitation Act
### Defendant Harris County, Texas

94.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

95.     Section 504 provides that "[]no otherwise qualified individual with a disability in the United States …shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794.

96.     Section 504 requires covered entities to provide reasonable accommodations to enable qualified individuals with disabilities to participate in programs or activities.

97.     By law, the sheriff is charged with operating jail and ensuring that the inmates receive proper care. See TEX. LOC. GOV'T CODE § 351.041(a) ("The sheriff of each county is the keeper of the county jail.").

98.     Under Texas law, administration of jail, including the obligations to provide medical care for, feed and clothe the prisoners, is the province of the sheriff of the parish. *Id.*

99.     Sheriffs in Texas are considered final policy makers with respect to management of the jail. *See id*. ("Each sheriff shall be the keeper of the public jail of his parish....")

100.    Harris County is subject to the Rehabilitation Act as an entity of local government that receives federal financial assistance. 29 U.S.C. § 794(b); C.F.R. § 27.1.

101.    Section 504 requires such recipients to modify such facilities, services, and programs as necessary to accomplish this purpose.

102.    The requirements for a Section 504 claim are: A plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."

103.    Plaintiff is a qualified individual with a disability pursuant to Section 504 because of his clavicle fracture, epidural hematoma, and subdural hemorrhage which resulted in loss of mobility and necessitated the use of a wheelchair at the time relevant to this lawsuit.

104.    Harris County discriminated against Plaintiff in violation of Section 504 by refusing to provide Plaintiff with a replacement wheelchair after confiscating it or a bottom bunk.

105.     Harris County declined to exhaust any effort to assist or accommodate Plaintiff and instead did nothing – despite multiple grievances requesting accommodation.

106.     Instead of accommodating Plaintiff's needs, Plaintiff was denied adequate accommodations available to others that would have prevented his injuries, namely by providing him with a wheelchair or bottom bunk.

107.     As a result of the unlawful actions of Harris County Plaintiff suffered injuries including pain and suffering, physical injuries, and emotional distress.

108.     The harm to Plaintiff was preventable by allowing him to have an accommodation like a wheelchair or bottom bunk.

109.     Because of Plaintiff's need for a wheelchair and bottom bunk and Defendant Harris County's refusal to provide him a wheelchair or bottom bunk, Plaintiff was not able to receive medically necessary accommodations like all other non-disabled inmates in the Harris County Jail.

110.     The ability to provide plaintiff with a wheelchair and bottom bunk were available – especially given that <u>Plaintiff had his wheelchair confiscated</u> and was not provided accommodation in any other manner.

111.     The failure to accommodate Plaintiff's disabilities was intentional and/or deliberately indifferent to his rights under Section 504 and was the proximate cause of his injuries.

**V.**
**DAMAGES**

112.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

113.     Plaintiff's injuries were a foreseeable event.

114.    Those injuries were directly and proximately caused by the unconstitutional conditions of confinement in Harris County Jail and violations of the Americans with Disabilities and Rehabilitation Act.

115.    As a result, Plaintiff is entitled to recover all actual damages allowed by law.

116.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a.    Physical injuries;
    b.    Physical pain and suffering;
    c.    Permanent physical disfigurement;
    d.    Physical impairment; and
    e.    Emotional distress, torment, and mental anguish.

117.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and requests the award of reasonable attorney's fees and costs of court.

## VI.
## ATTORNEYS' FEES

118.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees.

## VII.
## JURY REQUEST

119.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
**JAMES P. ROBERTS**,
Attorney-in-charge
Texas Bar No. 24105721
Federal ID No. 3244213

**BREANTA BOSS**,
Of counsel
Texas Bar No. 24115768
Federal ID No. 3738118

**SCOTT H. PALMER**,
Of counsel
Texas Bar No. 00797196
Federal ID No. 1751291

**PALMER PERLSTEIN**
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@palmerperlstein.com
scott@palmerperlstein.com
breanta@palmerperlstein.com

**COUNSEL FOR PLAINTIFF**